UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE MCALLISTER,

        Plaintiff,                            Civil Action No. 12-cv-10409

        v.                                 District Judge Stephen J. Murphy, III
                                        Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND
DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

      Plaintiff Shane McAllister appeals Defendant Commissioner of Social Security's denial of his application for supplemental security income. (*See* Dkt. 1, Compl, Transcript ("Tr.") 11.) Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 10, 15). For the reasons set forth below, this Court finds that the ALJ failed to give "good reasons" for giving the opinion of Plaintiff's treating-source insignificant weight. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 10) be GRANTED IN PART, that Defendant's Motion for Summary Judgment (Dkt. 15) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be REMANDED.

**I. BACKGROUND**

      In 1999, McAllister was run over (twice) by a truck. (Tr. 25.) It appears that he suffered, among other things, a cervical fracture, a pelvic fracture, as well as head, back, hip, and rib injuries.

(*See* Tr. 142.) Plaintiff maintains that he could not get out of bed for a year. (Tr. 25.) As a result of his injuries and resulting functional limitations, it appears that he received social security benefits for about one year. (*See* Pl.'s Mot. Summ. J. at 1; Tr. 31)

On September 29, 2008, McAllister applied for supplemental security income ("SSI"). (Tr. 11.) The alleged disability onset date for this application is years after the 1999 incident: July 1, 2007. (Tr. 85.) The Commissioner initially denied Plaintiff's application on November 17, 2008. (*Id.*) Plaintiff then requested an administrative hearing, and on June 7, 2010, he appeared with counsel before Administrative Law Judge Andrew Sloss, who considered his case *de novo*. (*See* Tr. 11-17, 21-34.) In a September 13, 2010 decision, ALJ Sloss concluded that Plaintiff was not disabled. (*See* Tr. 11-17.) His decision became the final decision of the Commissioner of Social Security ("Commissioner") on December 16, 2011 when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff filed this suit on January 31, 2012. (Dkt. 1, Compl.)

**A. Medical Evidence**

In September 2007, McAllister saw Dr. Bala Grandhi at Synergy Medical Education Alliance. (Tr. 195-96.) Dr. Grandhi noted that Plaintiff had a history of hypertension and had been recently diagnosed with diabetes. (Tr. 196.) Plaintiff also reported neuropathic pain in his right, lower rib area; Dr. Grandhi indicated that this was "secondary to [Mr. McAllister's] motor vehicle accident"; he prescribed Vicodin. (Tr. 195.)

In the fall and winter of 2007, McAllister saw Dr. Andrew Cohen, a podiatrist, for diabetic foot care. In October 2007, Plaintiff reported that his feet tingled and were sore. (Tr. 144.) Dr. Cohen found that Plaintiff had decreased epicritic sensations in both legs and that protective

sensation was absent in Plaintiff's toes. (*Id.*) He diagnosed peripheral neuropathy. (Tr. 145.) In November 2007, Dr. Cohen performed a nerve-conduction study. (Tr. 151.) The study revealed abnormal findings in both legs that Dr. Cohen believed were "consistent with the patient's reported history of diabetes and neuropathy." (*Id.*) In December 2007, Dr. Cohen prescribed Elavil, an antidepressant that can also be used to treat nerve pain. (Tr. 152); WebMD, Elavil Oral, http://www.webmd.com/drugs/drug-1807-Elavil+Oral.aspx (last visited Dec. 12, 2012).

In December 2007, Dr. Grandhi provided McAllister with a Vicodin refill for his chronic rib pain, but also "strongly advised" Plaintiff to reduce his use of that medication. (Tr. 192.)

In January 2008, Dr. Gavin Awerbuch performed an "initial neurological evaluation" of McAllister's right-sided rib pain. (Tr. 167-69.) Regarding the 1999 motor vehicle accident, Plaintiff reported a "history of cervical fracture, left rotator cuff tear which required surgery, closed [head] injury, pelvic fractures, low back pain, low back injury, as well as right rib fractures." (Tr. 167.) Plaintiff told Dr. Awerbuch that he still had neck and left-shoulder pain, but was able to manage that pain quite well. (*Id.*) Plaintiff was then working part-time and told Dr. Awerbuch that if there was full-time work available, he would work full-time. (*Id.*) On exam, Dr. Awerbuch found that Plaintiff's right ribs were tender upon palpation. (Tr. 168.) Plaintiff had a good range of motion in his upper and lower extremities, however, and Dr. Awerbuch noted "symmetry of muscle mass, tone, and strength" and a smooth gait. (*Id.*) Dr. Awerbuch diagnosed intercostal neuralgia, diabetes, diabetic neuropathy, and excessive daytime sleepiness (Plaintiff had reported restless sleep and Dr. Awerbuch suspected sleep apnea). (*Id.*) Dr. Awerbuch prescribed Ultram, Vicodin, Lidoderm patches, and neuropathy cream; he also scheduled a follow-up exam. (Tr. 169.)

In February 2008, McAllister returned to his podiatrist, Dr. Cohen. (Tr. 153.) Dr. Cohen

3

increased Plaintiff's Elavil prescription. (*Id.*) The next month, Plaintiff reported that the increased dosage made him tired and sleepy and said he might stop the medication and just "liv[e] with [the neuropathy]." (Tr. 153.)

In March 2008, McAllister returned to Dr. Grandhi at Synergy Medical. (Tr. 190-91.) Plaintiff told Dr. Grandhi that his rib pain was especially bothersome when he tried to move. (Tr. 191.) Plaintiff also reported, however, that Vicodin controlled his pain. (*Id.*) Dr. Grandhi refilled Plaintiff's Vicodin prescription, but advised Plaintiff to take the habit-forming medication only once every eight hours. (Tr. 190.) He also advised Plaintiff to change jobs; Plaintiff, however, was reluctant to do so because he was comfortable with construction work. (*Id.*)

McAllister also had a follow-up appointment with Dr. Awerbuch in March 2008. (Tr. 166.) He continued to report right-rib pain that increased on contact. (*Id.*) Plaintiff additionally reported right-shoulder pain that felt similar to the pain he had experienced around the time of his rotator-cuff surgery. (*Id.*) Dr. Awerbuch found that Plaintiff's right ribcage was tender upon palpation. (*Id.*) He also found that Plaintiff had a reduced range of motion in his shoulder and had a "positive impingement." (*Id.*) Plaintiff's shoulder was also "weak[] against resistance." (*Id.*) Because Ultram was making Plaintiff tired and unable to work, Dr. Awerbuch prescribed Vicodin. (*Id.*)

In June 2008, McAllister returned to Dr. Awerbuch with reports of hand numbness and tingling. (Tr. 165.) Plaintiff explained that he had been dropping things. (*Id.*) Dr. Awerbuch noted that Plaintiff had crepitations (i.e., crakles) and weakness in his right shoulder; Plaintiff reported having difficulty lifting a gallon of milk. (*Id.*) Plaintiff also reported chronic lower-extremity pain and paresthesias. (*Id.*) Dr. Awerbuch diagnosed (1) chronic severe nonmalignant pain, (2) right intercostal neuralgia, (3) obstructive sleep apnea, (4) chronic right-shoulder pain with impingement,

and (5) diabetic polyneuropathy. (*Id.*) That same day, Dr. Awerbuch also performed an EMG. (*Id.*) It evidenced bilateral carpal tunnel syndrome, which, according to Dr. Awerbuch, was consistent with Plaintiff's clinical symptoms. (Tr. 175.) Dr. Awerbuch ordered carpal tunnel braces. (*Id.*)

In August 2008, McAllister saw Dr. Awerbuch for continuing right-shoulder pain and tenderness. (Tr. 164.) Plaintiff again reported numbness and tingling in his hands. (*Id.*) Plaintiff said that he was using Vicodin up to four times per day which allowed him to function at a higher level than otherwise possible. (*Id.*) Dr. Awerbuch noted, "He has been spending weekends . . . camping, and he is able to this with . . . greater ease because of medications." (*Id.*) On exam, Plaintiff's grasp and pinch were weak. (*Id.*) Plaintiff also had a positive Tinel's test (a test for symptoms of carpal tunnel) and tenderness in the right shoulder. (*Id.*) Dr. Awerbuch diagnosed Plaintiff with the same five impairments as in June 2008. (*Id.*) He refilled Plaintiff's Vicodin prescription, but remarked about the potential for habituation, tolerance, and dependancy. (*Id.*)

Dr. Awerbuch also performed a sleep study in August 2008. (Tr. 172-73.) He observed 14 apenas (airflow cessation) and 144 hypopneas (airflow reduction) during the night of the study. (Tr. 172); Eric J. Olson, M.D., et al., *Obstructive Sleep Apnea-Hypopnea Syndrome*, 78 Mayo Clinic Proceedings 1545, 1545 (2003). Dr. Awerbuch diagnosed Plaintiff with obstructive sleep apnea. (Tr. 173.)

In May 2010, Dr. Awerbuch offered a medical opinion by way of deposition testimony. (Tr. 137-43.) He stated that he had been treating McAllister for "[a]bout three years." (Tr. 138.) Regarding Plaintiff's medical conditions, Dr. Awerbuch testified as follows:

> He has several neurological medical and orthopedic conditions. These include [1] recurrent left rotator cuff tear, [2] chronic neck pain with cervical fusion, [3] right rib fractures with intercostal neuralgia, [4] pelvic fractures with a chronic pelvic pain, [5] obstructive sleep

5

> apnea with daytime hypersomnolence with sleepiness, [6] right hip injury, and what I call [7] adjustment disorder with depression. He's also developed [8] chronic pain syndrome that requires narcotic analgesics. . . . [H]e also has [8] diabetes with a diabetic neuropathy.

(Tr. 138.) Dr. Awerbuch said that these problems were "chronic" and Plaintiff's prognosis was "poor." (*Id.*) Dr. Awerbuch testified that Plaintiff's subjective complaints and limitations were consistent with his physical examination findings and test results, including, Plaintiff's stated limitations of standing for 10 minutes, sitting for 20 to 30 minutes, and walking two blocks. (Tr. 139.) Dr. Awerbuch similarly indicated that Plaintiff's stated need to lie down nine to ten times during a day, for 15 to 30 minutes per time, was consistent with his diagnoses. (Tr. 140.) Regarding Plaintiff's fatigue, Plaintiff's counsel and Dr. Awerbuch had the following exchange:

> [ATTY:] He has several conditions that can cause fatigue, if you're diabetic as I understand you can be very tired.
> [DR. AWERBUCH:] The diabetes, the sleep apnea, the depression and the medications interfere[] with, not only cause fatigue, but these conditions cause trouble with concentration, attention.
> Q. Memory?
> A. Memory, sure.

(Tr. 141.) Dr. Awerbuch believed that Plaintiff could not work: "There's no way he can work on a regular basis, even in a sedentary position." (Tr. 142.)

### B. Testimony at the Administrative Hearing

#### *1. Plaintiff's Testimony Before the ALJ*

McAllister testified that pain from his 1999 injuries prevented him from working. (Tr. 25.) He explained, "I have a lot of problems with my lower back just aching. The wors[t] is in the chest [and rib] area where I have nerve damage. . . . It feels like somebody is jabbing me with a knife or something." (Tr. 29.) Plaintiff also said that his arthritis caused his body to ache "all the time," and that he had carpal tunnel syndrome. (Tr. 30.) Plaintiff told the ALJ that he took Methadone for

pain. (Tr. 25.) Plaintiff also testified to lying down six times per day, for a half-hour per time, "[j]ust to ease some of the pain." (Tr. 25) Regarding his feet neuropathy, Plaintiff said that if he stepped on a nail he "wouldn't even feel it." (Tr. 29.)

In terms of functional limitations, McAllister stated that he tried to go back to work after receiving social security for a year, but "could[] [not] keep up." (Tr. 31.) Plaintiff explained, "I was in so much pain doing it . . . I couldn't keep up with what I was supposed to be doing." (Tr. 31.) Plaintiff stated that if he sat, stood, or walked for more than twenty minutes he would be in "bad pain." (Tr. 26.) According to Plaintiff, the heaviest item he could lift was "[p]robably a gallon of milk." (Tr. 27.) He said that his wife did the housework and cooking. (Tr. 26.) When asked if he still could ride dirt bikes (a former hobby), Plaintiff responded, "I probably could, but I wouldn't even try it." (Tr. 27.)

*2. The Vocational Expert's Testimony Before the ALJ*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for a hypothetical individual with functional limitations that the ALJ believed accurately portrayed Plaintiff's functional limitations. In particular, the ALJ asked about job availability for a hypothetical individual of Plaintiff's age (41 on the alleged onset date (Tr. 85)), education (high-school (Tr. 24)), and work experience (apartment building maintenance (Tr. 32)) who could perform the requirements of "light work" (*see* 20 C.F.R. § 416.967(b)), could "occasionally" (up to 1/3 of a workday) reach and handle, could "occasionally" climb stairs and ramps, could "occasionally" balance, stoop, crouch, kneel, or crawl, but could never reach overhead, or climb ladders, ropes, or scaffolds. (Tr. 33.) The VE testified that such an individual could perform several "light, unskilled" jobs: information clerk, security guard, and visual inspector. (Tr.

33.)  The VE stated that there were 1,700, 6,000, and 2,200 such jobs available in Michigan's lower peninsula.  (*Id.*)

## II.  THE ADMINISTRATIVE LAW JUDGE'S FINDINGS

Under the Social Security Act (the "Act"), supplemental security income is "available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Sloss found that Plaintiff had not engaged in substantial gainful activity since Plaintiff applied for SSI, September 29, 2008. (Tr. 13.) At step two, he found that Plaintiff had the following severe impairments: "diabetes, sleep apnea, carpal tunnel syndrome, status/post fracture and status/post rotator cuff tear." (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 14.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform

> light work as defined in 20 CFR 416.967(b) except that the claimant is unable to climb ladders, ropes or scaffolds. The claimant is able to occasionally climb ramps or stairs and occasionally balance, stoop, crouch, kneel or crawl. The claimant is unable to perform any overhead reaching, and is limited to occasional reaching and handling.

(Tr. 14.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 15.) At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 15-16.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 16.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

10

2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

None of McAllister's three claims of error are well-developed. Indeed, the Commissioner says that two are so cursorily raised that Plaintiff has waived them. (Def.'s Mot. Summ. J. at 9-12.) But the Commissioner does not claim that Plaintiff has waived his treating-source argument, i.e., that the ALJ erroneously "disregard[ed]" Dr. Awerbuch's opinion. (*See* Pl.'s Mot. Summ. J. at 5; *see also id.* at 6.) Nor does the Commissioner appear to dispute that Dr. Awerbuch's opinion qualifies as a treating-source opinion. *See* (Def.'s Mot. Summ. J. at 5-6); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). The argument has been addressed on the merits, and, accordingly, the Court begins with this claim of error.

In giving Dr. Awerbuch's opinion less than "significant weight," the ALJ stated:

> A deposition statement regarding the claimant's condition and functioning was provided by Dr. Awerbuch on May 24, 2010. Dr. Awerbuch indicates that the claimant is unable to stand for more than ten minutes at a time and that the claimant is unable to sit in an upright position longer than thirty minutes at a time. Dr. Awerbuch also indicates that the claimant is unable to walk more than two blocks and that the claimant is required to lie down and rest several times per day due to his pain symptoms. In addition, Dr. Awerbuch indicates that the claimant is "totally and permanently disabled from full-time gainful employment" (Exhibit B8E). . . .
>
> The medical evidence of record does not support the level of symptomology alleged. Dr. Awerbuch provided a deposition outlining severe limitations and continued pain symptoms. However, this opinion is not supported by treating records, including those provided by Dr. Awerbuch (Exhibits B8E, B1F, B2F, B3F, B4F,

11

>B5F, B6F and B8F). . . .
>
>As noted above, Dr. Gavin Awerbuch has indicated in a May 2010 deposition, that the claimant is "totally and permanently disabled from full-time gainful employment". Social Security Regulations and Social Security Ruling 96-2p provide that the undersigned must consider the opinions of physicians of record and that controlling weight must be given to the medical opinion of a treating physician if it is well supported by medical evidence and if it is not inconsistent with other substantive evidence. Specifically, the objective clinical evidence in this matter does not demonstrate a markedly reduced level of functioning, as demonstrated by the claimant's treatment history and the findings provided by treating sources, including Dr. Awerbuch. Therefore, the undersigned is unable to accord significant weight with regard to the opinion provided by Dr. Awerbuch. The undersigned finds that this opinion conflicts with the record as a whole and is not fully supported by the objective evidence (Exhibits B8E, B1F, B2F, B3F, B4F, B5F, B6F and B8F).

(Tr. 14-15.)

This analysis is conclusory. Accompanying the treating-source rule is a procedural requirement that the ALJ's narrative provide "good reasons" for the weight assigned to a treating-source opinion. *See e.g.*, *Wilson*, 378 F.3d at 544; *Rogers*, 486 F.3d at 243. The Court emphasizes that the right is substantial: abridgement warrants remand even when substantial evidence supports the ALJ's ultimate disability determination. *Rogers*, 486 F.3d at 243. Stating that a treating-source opinion is "not supported by treating records," or is in "conflict[] with the record as a whole and is not fully supported by the objective evidence" while citing every medical exhibit in the administrative record save one, does not suffice to comply with the reasons-giving requirement. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record;

12

there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." (citation omitted)); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("'[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected,' the agency has explained. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. 'Treating source medical opinions are still entitled to deference and *must be weighed using all of the factors provided in 20 CFR 404.1527 . . . .' Id.* (emphasis added).").

The Court recognizes that Plaintiff has not explicitly raised this procedural error. But the procedural right is not purely Plaintiff's to forfeit. Rather, one of the purposes of this procedural requirement is to allow the Court to engage in meaningful appellate review:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule*.

*Wilson*, 378 F.3d at 544 (internal quotation marks omitted, emphasis added); *accord* S.S.R. 96-2p, 1996 WL 374188, at *5 (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). In fact, at least one court in the Sixth Circuit has rejected the Commissioner's waiver argument and *sua sponte* remanded for an ALJ to comply with the explanatory aspect of the treating-source rule. *See*

13

*Funk v. Astrue*, No. 1:10-CV-2867, 2012 WL 1095918, at *2 (N.D. Ohio Mar. 30, 2012) ("The Commissioner makes arguments that [Plaintiff] has waived any challenge to the ALJ's cursory treatment of evidence from her longstanding treating physician, but it would work a substantial injustice to gut a procedural requirement self-imposed by the Commissioner and intended to protect applicants like [Plaintiff] . . . merely because her counsel whiffed on a challenge characterized by the Commissioner as ubiquitous fare in these cases." (internal quotation marks and citation omitted)). And in this case, the Court is not even truly raising the issue *sua sponte*. For one, the Commissioner has addressed the explanatory requirement in his brief. (Def.'s Mot. Summ. J. at 9 (citing *Wilson*, 378 F.3d at 544).) For another, Plaintiff argues that substantial evidence does not support the ALJ's decision to "disregard[]" Dr. Awerbuch's decision. To determine whether substantial evidence does in fact support the ALJ's rejection of Dr. Awerbuch's opinion invites the Court to consider the reasons the ALJ gave for rejecting the opinion.

Because the ALJ did not adequately explain his decision to assign Dr. Awerbuch's opinion insignificant weight, the Court recommends remand. *See Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 553 (6th Cir. 2011) (noting that "'[w]e do not hesitate to remand,' and 'we will continue remanding when we encounter opinions from ALJ [s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" (quoting *Hensley*, 573 F.3d at 267)). This is not a case where the record itself makes plain that Dr. Awerbuch's opinion should be rejected. *Cf. Wilson*, 378 F.3d at 547 ("[I]f a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal."). For one, there is objective medical evidence that supports Dr. Awerbuch's opinion. Regarding Plaintiff's ability to lift, an EMG evidenced bilateral carpal tunnel syndrome, physical

14

examination revealed that Plaintiff's shoulder, pinch, and grasp were weak, and a Tinel's test was positive. (Tr. 164, 166, 175.) Additionally, a nerve-conduction study confirmed Plaintiff's feet neuropathy. (Tr. 151.) Second, it appears that Dr. Awerbuch offered the only "acceptable medical source" opinion in the record. *See* S.S.R. 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").[1] Third, Dr. Awerbuch treated Plaintiff for a number of years, and is a specialist in neurology and pain management — factors conceivably overlooked by the ALJ. *See* 20 C.F.R. § 416.927(c)(2), (5). Accordingly, remand is warranted for further explanation as to why Dr. Awerbuch's was given insignificant weight.

The Court, however, agrees with the Commissioner that Plaintiff's remaining two arguments are raised in only a perfunctory manner and are therefore forfeited. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)); *Baldwin v. Astrue*, No. 08-395, 2009 WL 4571850, at *3 (E.D. Ky. Dec. 1, 2009) ("The Plaintiff is represented by counsel, and the Court is not required to formulate arguments on the Plaintiff's behalf."). In attempting to make a credibility argument, Plaintiff says, "[The issue is whether the Administrative Law Judge committed reversible error in] ruling that the testimony of Claimant was not credible." (Pl.'s Mot. Summ. J. at 5.) He also states, "the

---

[1]There is a residual functional capacity assessment in the record from a "Matthew Branch" but this person does not identify himself as a physician. (Tr. 206.) The "Medical Consultant's Code" is "E.E.," (*id.*), and the Court has been unable to determine the meaning of this code. The Commissioner has not asserted that Matthew Branch is an "acceptable medical source"; indeed, the Commissioner does not even mention Branch's opinion. (*See generally* Def.'s Mot. Summ. J.) In all likelihood Branch is a Single Decision Maker or non-physician consultant.

15

Administrative Law Judge decision that Claimant's testimony was not credible was not warranted." (*Id.* at 6.) While this may be so, Plaintiff does not explain why. It is therefore not the Court's job to investigate further.

Plaintiff also conclusorily argues "[i]ssue two is whether the Administrative Law Judge erred in failing to consider Claimant's multiple impairments? Claimant contends that the answer is yes." (Pl.'s Mot. Summ. J. at 5.) He says that the ALJ "failed to address the issue whether the multitude of impairments suffered by Mr. McAllister warrants a finding of disability." (*Id.* at 6.) But Plaintiff cites no impairment or medical record that the ALJ failed to consider. Nor does Plaintiff explain how the ALJ's failure to consider the "combined effect[s] of [his] impairments" prejudiced the disability determination. Should other listings have been considered at step three? Do the combined impairments "medically equal" a listing? Should additional limitations have been included in the residual functional capacity assessment between steps three and four? Plaintiff does not develop these or other arguments, and "the Court is not required to formulate arguments on the Plaintiff's behalf," *Baldwin*, 2009 WL 4571850, at *3. Plaintiff's multiple-impairment argument is therefore forfeited.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that the ALJ failed to give "good reasons" for giving Dr. Awerbuch's treating-source opinion insignificant weight. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 10) be GRANTED IN PART, that Defendant's Motion for Summary Judgment (Dkt. 15) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be REMANDED.

16

**VI. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES MAGISTRATE JUDGE

Dated: January 8, 2013

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 8, 2013.

                                            s/Jane Johnson
                                            Deputy Clerk